390 A.2d 1299

**COMMONWEALTH of Pennsylvania**

v.

**Robert C. BORING, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 18, 1977.

Decided July 12, 1978.

Ralph T. Forr, Jr., Assistant Public Defender, Altoona, for appellant.

Donald E. Speice, Assistant District Attorney, Altoona, with him J. Michael Dorezas, Assistant District Attorney, Hollidaysburg, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

On May 14, 1976, complaints were filed with and warrants were issued by District Magistrates William B. Lower and James W. Morrissey authorizing the arrest of appellant, Robert C. Boring, for his alleged involvement in two separate robberies. It was alleged that on May 9, 1976, appellant robbed the Major Market in Altoona, Pennsylvania, taking approximately one hundred and fifty dollars, and that on May 14, 1976, appellant robbed the Country Garden Market, which is also located in Altoona, Pennsylvania, this time taking six hundred and ten dollars. Appellant was subsequently arrested, tried by jury, and found guilty of two counts of robbery [1] and one count of crimes committed with firearms.[2] Appellant now appeals to this court.

Appellant's first argument is that the trial court erred in admitting a certified copy of the registration of a certain vehicle, similar to the vehicle used to commit the robberies, through the testimony of State Trooper Barry Bidelspach. This vehicle was similar to the one used in the commission of the robberies. The basis of the objection to Trooper Bidelspach's testimony was that he was not an employee of the Bureau of Motor Vehicles who could testify as to the prepa-

1. The crime of robbery is defined by the Act of June 24, 1976, P.L. 425, No. 102, Sec. 1, 18 Pa. C.S. Sec. 3701 (Supp.1977).

2. Crimes committed with firearms is an offense under the Act of December 6, 1972, P.L. 1482, No. 334, Sec. 1, 18 P.S. Sec. 6103 (1973).

ration of the report.    Appellant's objection is not well-founded.

██ The legislature has provided that certified copies of any records pertaining to motor vehicles may be introduced into evidence in the courts of the Commonwealth where such original records would be admitted into evidence.[3]    There is no requirement under this particular statute that a custodian or other qualified witness accompany the records into court and testify as to their mode of preparation.    A comparison between the Vehicle Code Act and the Uniform Business Records as Evidence Act[4] is instructive on this point.    By contrast the Business Records Act specifically requires the testimony of "the custodian or other qualified witness" to provide background on the identity and mode of preparation.    No such prerequisite is found in the relevant provision of the Vehicle Code Act.    A witness is required to testify as to the manner of preparation of a business record so that the court can be assured that the record is true and accurate.    Public and official records, however, are different

**3.** At the time of trial, the Vehicle Code Act of April 29, 1959, P.L. 58, Sec. 1224, as amended October 2, 1974, P.L. 660, No. 217, Sec. 2, 75 P.S. Sec. 1224, read:

"Any certified copies, or certified photostatic copies, or certified microfilm reproductions, of any records, books, papers, documents, and rulings of the secretary, when certified under the seal of the department by its duly authorized agent, shall be acceptable as evidence in the courts of this Commonwealth with the same force and effect as the originals, in all cases where such original records, books, papers, documents, and rulings would be admitted in evidence."

This section has recently been amended, though the provision is substantially the same, in the Act of June 17, 1976, P.L. 162, No. 81, § 1, 75 Pa. C.S. § 6341.

**4.** This law can be found at the Act of May 4, 1939, P.L. 42, No. 35, Sec. 2, 28 P.S. Sec. 91b (1958).    This section reads:

"A record of an act, condition or event shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

because the custodian of the record involved labors under an official duty, which gives a high probability of accuracy. The portion of the Motor Vehicle Act in question dispenses with the necessity of calling the custodian of the records to the stand because, by giving his certification, the absent custodian is, in essence, verifying the existence and genuineness of the original.[5]   In other words, certification of the records is designed to serve the purpose which calling the custodian of the records into court would otherwise serve. There was no necessity under the statutory provisions for a representative of the Motor Vehicles Department to come into court and testify as to the mode of preparation of the department's records.

Appellant's last two issues involve the rule promulgated under *Commonwealth v. Graves*, 461 Pa. 118, 334 A.2d 661 (1975), where the court held that evidence of intoxication may be offered to negate the presence of specific intent for criminal acts.[6]   Appellant argues that the trial court erred by denying defense counsel's request to recall a witness, an expert on the effects of drugs and alcohol, for the purpose of establishing the effect of alcohol on the power to reflect. Appellant further argues that during its charge to the jury the trial court erred by referring to "proposed" legislation which would effectively overrule *Graves*, after giving a *Graves*-type instruction.   For neither of these reasons did appellant suffer prejudice.   Though the trial judge, district attorney, and defense counsel were not aware at the time of

---

**5.**  As one legal scholar stated:
  "The officer's authority (to certify) rests on his custody of the original; this custody, however, enables him to speak, not merely to the correctness of the copy, but also to the *existence and genuineness* of the original  .  .  .  and although it may not have been prepared by the chief officer or custodian himself, still his knowledge of the affairs of the office as transacted by his subordinates is sufficiently direct to suffice as personal knowledge." (Emphasis in original.)  5 Wigmore, Evidence § 1677 (Chadbourn rev. 1974).

**6.**  Appellant also argues that the assistant district attorney made a comment during the trial which entitled the defendant to a mistrial. This issue is wholly frivolous for a variety of reasons and need not be discussed herein.

trial, the legislature had in fact already *passed* a law disallowing the use of voluntary intoxication or voluntary drugged condition as a defense to a criminal charge, permitting such evidence to be introduced only to reduce the degree of murder.[7] The parties have filed supplemental briefs with this court acknowledging this legislation and admitting it was effective at the time of trial. Hence, appellant now argues that the trial court's instructions were argumentative and confusing. We have read the court's charge and do not find it so.

While we do not approve of the lower court's speaking of "proposed legislation," the court's duty being to instruct the jury on the law as it stands at the time of trial, the court's error in the instant case was harmless to the appellant. The fact that the court instructed the jury on *Graves* was more than appellant legally deserved, so that the court's reducing the efficacy of its instruction by referring to proposed legislation, still left open for the jury's consideration a defense which, as a matter of law, appellant did not possess. Thus, it was the Commonwealth, not appellant, which was harmed by the equivocal charge on the effect of intoxication on criminal responsibility. Similarly, the court's refusal to allow defense counsel to recall a witness for the purpose of solidifying this defense was not error.

For the foregoing reasons the judgments of sentence are affirmed.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

7. Specifically, the new law provides:
   "Neither voluntary intoxication nor voluntary drugged condition is a defense to a criminal charge, nor may evidence of such conditions be introduced to negative the element of intent of the offense, except that evidence of such intoxication or drugged condition of the defendant may be offered by the defendant whenever it is relevant to reduce murder from a higher degree to a lower degree of murder."
   The Act of April 7, 1976, P.L. 72, No. 32, § 1, 18 Pa.C.S. § 308, effective immediately.